**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

XING CHEN,
Petitioner,
v.
ERNESTO SANTACRUZ, ET AL.,
Respondents.

Case No. 5:26-cv-03806-AJR

**MEMORANDUM DECISION AND ORDER DENYING PETITION**

## I.
## INTRODUCTION & PROCEDURAL HISTORY

On July 11, 2026, Petitioner Xing Chen (A# 078-317-605) ("Petitioner"), an immigration detainee proceeding *pro se*, filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 (the "Petition"), challenging his detention in immigration custody. (Dkt. 2 at 2-6.) The Petition makes clear that Petitioner is subject to a final order of removal and Petitioner is not challenging that removal order, but instead contends that his detention on June 26, 2026 violated his statutory and constitutional rights. (Id. at 20, 24-25.) Also on July 11, 2026, Petitioner filed an *Ex Parte* Application for Temporary Restraining Order (the "*Ex Parte* Application"). (Dkt. 3.) On July 20, 2026, Respondents Ernesto Santacruz, Field Office Director,

Enforcement and Removal Operations ("ERO"), Los Angeles Field Office, Immigration and Customs Enforcement ("ICE"), David Venturella, Acting Director, ICE, Markwayne Mullin, Secretary of the Department of Homeland Security ("DHS"), Todd Blanche, Acting Attorney General, and Acting Warden of the Adelanto ICE Processing Center (collectively, "Respondents") filed an Answer to the Petition and Opposition to the *Ex Parte* Application (the "Answer"). (Dkt. 10.) The Answer contends that the Petition and *Ex Parte* Application should be denied because Respondents are in possession of travel documents for Petitioner and Respondents intend to remove Petitioner in the reasonably foreseeable future. (Id. at 2.) On June 23, 2026, Petitioner filed a Reply to the Answer (the "Reply"). (Dkt. 11.) The Reply acknowledges that Petitioner's removal is "presently foreseeable," but contends that Petitioner should nonetheless be released until he is removed. (Id. at 2, 7.)

On July 24, 2026, Respondents filed a Notice of Intended Removal advising that Respondents had scheduled Petitioner for removal on August 1, 2026, in accordance with the administratively final order of removal issued for him on March 28, 2008. (Dkt. 12.) On July 27, 2026, the Court directed Petitioner to file a response setting forth any reason why the Petition would not be rendered moot by his removal. (Dkt. 13.) On July 28, 2026, Petitioner filed a Response (the "Response") acknowledging that the Petition may be rendered moot upon his removal, but contending that the Petition is not currently moot. (Dkt. 14 at 2.) In the Response, Petitioner further contends that this Court should adjudicate the Petition now and resolve only the legality of Petitioner's current detention. (Id. at 4-5.) In the alternative, Petitioner contends that this Court should retain jurisdiction over the action and defer any ruling on mootness until after Petitioner's removal. (Id. at 5-6.)

On July 31, 2026, the Court issued an Order Regarding Petitioner's Intended Removal. (Dkt. 15.) The Court advised that it had carefully reviewed the briefing and concluded that in light of the removal then-scheduled for August 1, 2026, granting the relief requested in the Petition would impermissibly interfere with

Respondents' execution of a final order of removal. (Dkt. 15 at 2 (citing Rauda v. Jennings, 55 F.4th 773, 778 (9th Cir. 2022); 8 U.S.C. § 1252(g)).) Accordingly, the Court declined to rule on the Petition at that time and directed Respondents to file a status report regarding Petitioner's removal no later than August 5, 2026. (Id.)

On August 5, 2026, Respondents filed a Status Report advising that Petitioner was not removed on August 1, 2026 because there were some issues with his parental interest form that have been resolved. (Dkt. 16 at 2.) Therefore, Respondents advised that Petitioner's removal had been rescheduled for August 11, 2026. (Id.) Based on this Status Report, the Court directed Respondents to file a further status report no later than August 13, 2026. (Dkt. 17.) On August 13, 2026, Respondents filed a Status Report advising that Petitioner was not removed on August 11, 2026 "because he physically refused to board his removal flight." (Dkt. 18 at 2.) Respondents provided a copy of the Custody Log stating that Petitioner "Failed to Comply with Removal Efforts - Failure to Board Plane." (Dkt. 18-1 at 1.) Based on this Status Report, the Court directed Respondents to file a further status report no later than August 24, 2026. (Dkt. 19.)

On August 18, 2026, Petitioner filed a Response arguing that Respondents had "not supplied the evidentiary showing required by controlling Ninth Circuit authority to establish that Petitioner himself caused the continued detention." (Dkt. 20 at 2.) However, the Response did not actually dispute Respondents' contention that Petitioner refused to physically board his removal flight or offer any contrary evidence. (Id.) On August 24, 2026, Respondents filed a Status Report supported by the Declaration of Deportation Officer Saul Hernandez stating that on August 11, 2026, Petitioner "refused to leave and board the commercial flight." (Dkt. 21-1 at 1.) The Status Report further advised that Petitioner was again scheduled for removal on September 4, 2026. (Dkt. 21 at 2.) On August 28, 2026, Petitioner filed a Response once again disputing the evidence provided by Respondents that Petitioner intentionally frustrated his removal, but also still not disputing those facts or offering

contrary facts. (Dkt. 22 at 2.)

On August 30, 2026, the Court issued an Order noting that it had reviewed the recent Status Report and Response and noting that the Response "does not actually dispute the declaration offered by Respondents with any contrary facts." (Dkt. 23.) Thus, the Court concluded that there was no factual dispute because the declaration offered by Respondents stood uncontradicted. (Id.) The Court advised that if Petitioner believed that the declaration offered by Respondent's was inaccurate, then Petitioner would need to offer admissible evidence to support such assertion. (Id.) The Court further advised that in the absence of such evidence from Petitioner, the Court would permit Respondents to attempt to remove Petitioner once again on September 4, 2026. (Id.)

On September 7, 2026, Respondents filed a Status Report advising that Petitioner again refused to leave and board the commercial flight that was scheduled for September 4, 2026. (Dkt. 24.) On September 8, 2026, Respondents filed a further Status Report supported by the Declaration of Saul Hernandez. (Dkt. 25-1.) According to the declaration, immigration authorities at Adelanto transferred Petitioner to the custody of immigration authorities at Los Angeles in preparation for his removal flight via commercial flight at the Los Angeles International Airport. (Id. at 2.) The declaration further states that "Petitioner, again, failed to comply with his own removal by refusing to leave his holding cell to be transported to his removal flight." (Id.) "Accordingly, Petitioner was transferred back to ERO Adelanto custody where his is currently being held in [the Adelanto ICE Processing Center]." (Id.) Finally, Officer Hernandez states that "[c]onsidering Petitioner refused a second time to board a commercial flight for his removal, I have reached out to a Supervisory Deportation and Detention Officer to explore ERO's other options to effectuate removal." (Id.)

The parties have consented to proceed before the undersigned U.S. Magistrate Judge for all purposes. (Dkts. 4, 8.) **For the reasons set forth below, the Court**

**concludes that the Petition must be DISMISSED WITHOUT PREJUDICE for lack of jurisdiction.**

## II.

## LEGAL STANDARD FOR IMMIGRATION DETENTION

The Immigration and Nationality Act ("INA") establishes the procedures governing detention, release, and removal of noncitizens ordered removed from the United States. The statute at issue here, 8 U.S.C. § 1231(a), applies to detention following the entry of final order of removal, including individuals in withholding-only proceedings. See Johnson v. Guzman Chavez, 594 U. S. 523, 533 (2021); Avilez v. Garland, 69 F.4th 525, 530 (9th Cir. 2023).

Under 8 U.S.C. § 1231(a)(1)(A), an alien who has been ordered removed must be detained during the 90-day removal period. 8 U.S.C. § 1231(a)(1)(A); see also Johnson v. Arteaga-Martinez, 596 U.S. 573, 578 (2022). Detention during the removal period is mandatory. See 8 U.S.C. § 1231(a)(2). After the 90-day removal period, "the Government 'may' continue to detain an alien who still remains here or release that alien under supervision." Zadvydas, 533 U.S. at 683 (quoting 8 U.S.C. § 1231(a)(6)). However, Section 1231(a)(6) includes an implicit limit on "an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Id. at 689. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id. at 699. Recognizing constitutional concerns raised by such prolonged detention, the Supreme Court observed "Congress previously doubted the constitutionality of detention for more than six months," and, therefore, "for the sake of uniform administration in the federal courts," established a presumptively reasonable six-month period for post-removal-order detention. Id. at 701. This six-month period is a presumption, not a guarantee of release, and detention may continue so long as removal remains reasonably foreseeable. Id.

After the six-month period, the burden is on the alien to show that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Id.; see also 8 C.F.R. § 241.13 (setting out procedures to determine whether there is a significant likelihood of removal pursuant to Zadvydas). If the alien meets this burden, then the Government must "introduce evidence to refute that assertion" or release the alien. Id. However, the alien still "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id. Importantly, "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id.

## III.

## ANALYSIS

As referenced above, the Ninth Circuit has held that 8 U.S.C. § 1252(g) strips courts of jurisdiction to interfere with the Attorney General's execution of removal orders. See Rauda, 55 F.4th at 778 ("[U]nder a plain reading of the text of the statute, the Attorney General's enforcement of long-standing removal orders falls squarely under the Attorney General's decision to execute removal orders and is not subject to judicial review." (internal quotation marks omitted)). Here, it is undisputed that Petitioner is subject to a final order of removal and that he is not challenging that removal order. (Dkt. 2 at 20, 24-25.) It is also undisputed that Respondents have attempted to lawfully remove Petitioner on August 11, 2026, and September 4, 2026, but that on both occasions, Petitioner physically refused to cooperate with and prevented his removal. (Dkt. 18-1 at 1; Dkt. 21-1 at 1; Dkt. 25-1.) These facts are supported by documentary evidence as well as sworn declarations that stand uncontradicted. (See Dkt. 18-1 at 1; Dkt. 21-1 at 1; Dkt. 25-1.)

In light of these undisputed facts, the Court concludes that Petitioner is not

entitled to relief and that any ruling by this Court in favor of Petitioner would unduly interfere with Respondents' ability to effectuate Petitioner's final order of removal. See 8 U.S.C. § 1252(g). Moreover, to the extent Petitioner is challenging his prolonged detention under Zadvydas, any such claim is denied because Petitioner is only still detained due to his own conduct. Moreover, it is clear that Petitioner's removal is likely to occur in the reasonably foreseeable future.

## IV.

## CONCLUSION

Based on the foregoing, the Court concludes that the Petition must be DISMISSED WITHOUT PREJUDICE for lack of jurisdiction. IT IS SO ORDERED.

DATED: October 5, 2026

HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE